IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN MELZER,<br><br>    Plaintiff,<br><br>  v.<br><br>CNET NETWORKS, INC.,<br><br>    Defendant. | No. C 06-03817 WHA<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL PRODUCTION** |

**INTRODUCTION**

In this shareholder derivative action, plaintiff moves to compel production of the special committee report created by CNET in response to allegations that the company was at risk for having granted backdated stock options to its employees. Because the mandatory stay under the PSLRA applies and plaintiff has not shown prejudice sufficient to lift the stay, plaintiff's motion to compel production is **DENIED**.

**STATEMENT**

On May 16, 2006, the Center for Financial Research and Analysis published an article suggesting that several companies, including defendant CNET Networks, Inc., may have backdated certain stock options granted to their employees (Compl. ¶ 50). Six days after the article was published, CNET's board of directors authorized the creation of a special committee to investigate past option-granting practices (Nelson Decl. ¶¶ 1–2). With the help of outside counsel Davis Polk and Wardwell LLP and outside auditors, CNET completed a four-month

1  investigation that culminated in the creation of the special committee report (*id.* at ¶¶ 3–4). The
2  report was 74 pages in length and was dated October 10, 2006 (*id.* at ¶ 5). The report's stated
3  purpose was to investigate the company's past stock-option-granting practices and to determine
4  whether remedial actions, such as suing past CNET officers or directors, needed to be taken by
5  the company (*id.* at ¶ 6).

6  When creating the report, the special committee agreed not to disseminate copies of the
7  report to anyone outside CNET's board and counsel (*id.* at ¶ 7). In addition to the board and
8  CNET's counsel, the following people and entities received copies of the report: a "limited
9  number" of CNET's current senior executives, attorneys from Latham & Watkins LLP who
10 represent CNET in this action and other securities derivative actions, forensic accounting
11 advisors engaged by Latham and Watkins LLP to assist in representation, CNET's outside
12 auditor KPMG LLP, the SEC, the office of the United States Attorney for the Northern District
13 of California, and the NASDAQ Listing Qualifications Panel in connection with proceedings to
14 delist CNET securities from the NASDAQ (*id.* at ¶ 8). Disclosure of the report to the SEC and
15 the United States Attorney was made pursuant to confidentiality agreements stating that such
16 disclosure did not waive attorney-client privilege or attorney work-product protection, and
17 prohibiting further disclosure (*id*. at ¶ 9). Whether these self-serving agreements now operate to
18 prevent a waiver as against third parties is a key issue, albeit one that need not be reached at this
19 time. As a matter of practice, NASDAQ does not enter into confidentiality agreements,
20 however, they do not publicly disseminate information submitted to the Delisting Qualifications
21 Panel except under subpoena or other request by a court or regulatory body (*id.* at ¶ 9).

22 The day after the special committee report was released, October 11, 2006, CNET
23 issued a press release that was posted to its website (Goodman Decl. Exh. A). The press release
24 claims to have summarized the key findings of the report (*ibid*).

25 The first complaint in the case was filed as a derivative action on June 19, 2006, and
26 alleged both federal securities claims under Sections 10(b), 14(a), and 20(a), and state law
27 claims. It named CNET and a number of its current and former directors and board members as
28 defendants. A first amended complaint was filed on August 28, 2006, after Melzer was named

2

1 lead plaintiff and counsel was appointed. Defendants filed motions to dismiss on October 26,
2 2006. These motions were never heard, as plaintiff filed a second amended complaint instead
3 of filing an opposition to defendants' motions on November 9, 2006. Plaintiff's second
4 amended complaint alleged violations of 15 U.S.C. 10(b), 14(a), and 20(a), and disgorgement
5 under the Sarbanes-Oxley Act, 15 U.S.C. 7243.

6     A hearing was held on November 16, 2006, regarding the events surrounding
7 defendants' motions to dismiss. Plaintiff stated that they filed an amended complaint instead of
8 opposing defendants' motions because they desired to amend their complaint based on the press
9 release that CNET had issued on October 11, 2006, regarding the special committee report.
10 After further discussion, counsel were given until January 11, 2007, to file a final amended
11 complaint. In this discussion, counsel for plaintiff argued that they should be able to see the
12 special committee report before filing the final complaint. An order dated November 16, 2006,
13 granted defendants' motion for a stay of discovery, but allowed plaintiff to file a motion to
14 compel only the production of the special committee report. After hearing, this order now
15 issues on that motion.

## ANALYSIS

17     The PSLRA states in relevant part that "[i]n *any private action* under this chapter, all
18 discovery and other proceedings shall be stayed during the pendency of any motion to dismiss,
19 unless the court finds upon the motion of any party that particularized discovery is necessary to
20 preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. 78u-4(b)(3)(B)
21 (emphasis added). CNET argues that the PSLRA demands that *all* discovery be stayed if there
22 is a pending motion to dismiss. Because plaintiff's claims are based in part on the Securities
23 Exchange Act of 1934, the stay should apply. CNET also points out that a separate section of
24 the PSLRA deals with issues specific to class actions, such as selection of lead plaintiffs and
25 class counsel, and that the relevant section states explicitly that it applies to class actions. 15
26 U.S.C. 78(a)(3)(B).

27     Neither the Ninth Circuit nor any other circuit has addressed whether the PSLRA's
28 discovery stay applies to derivative actions also asserting federal securities law claims. A

3

recent decision in this district held that the PSLRA's discovery stay applies to derivative actions that allege claims under the 1934 Act as presented in the context of an option-backdating case. *In re Altera Corp. Deriv. Litig.*, 2006 WL 2917578 (N.D. Cal. October 11, 2006) (Judge Ware). Similarly, two other district court decisions have held that the stay applies to derivative actions alleging violations of the 1934 Act. *Erickson v. Horing*, 2000 U.S. Dist. LEXIS 22432, *19–*22 (D. Minn. 2000); *In re Trump Hotel Shareholder Deriv. Litig.*, 1997 U.S. Dist. LEXIS 11353, *3–*4 (S.D. N.Y. 1997). Plaintiff's brief opposing the motion for a stay of discovery cites to one decision holding that the PSLRA's heightened pleading standards do not apply to a Section 10b claim brought by an individual. *Tengg v. Steger*, 2002 WL 31641648, *3 (D. V.I. 2002). In a somewhat analogous decision, a district court declined to lift the stay to compel production of a company's internal investigation report but ordered production of the documents on which the report was based to the extent already produced to the government. There, the district court held that derivative plaintiffs had shown undue prejudice because there was a risk of losing evidence, and because the documents were produced to other plaintiffs in other cases against the company. *In re Royal Ahold N.V. Sec. and ERISA Litig.*, 220 F.R.D. 246, 251–253 (D. Md. 2004). No decisions have been found where the PSLRA's stay was denied where plaintiffs brought derivative 1934 Act claims, or where the stay was denied solely because claims under the 1934 Act were not brought by a class. The weigh of the case law holds that the PSLRA stay applies in cases like this. This order will follow that authority.

Under the mandatory stay, parties may conduct discovery if a district court finds that "particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. 78u-4(b)(3)(B). "[A]s a matter of law, failure to muster facts sufficient to meet the Act's pleading requirements cannot constitute the requisite 'undue prejudice' to the plaintiff justifying a lift of the discovery stay. . ." *SG Cowen Secur. Corp. v. United States District Court*, 189 F.3d 909, 913 (9th Cir. 1999).

Plaintiff argues that if the stay applies it should be lifted with respect to the special committee report because plaintiff will suffer undue prejudice if the report is not produced. At the hearing on November 16, 2006, counsel for Melzer argued that they wish to see the special

4

committee report in anticipation of preparing an amended complaint. Counsel identified two reasons they need the special committee report: to plead a complaint that could survive a motion to dismiss, and to plead demand futility under Delaware law. The former is precisely the kind of request for discovery that Ninth Circuit in *SG Cowen* denied, at least insofar as the 1934 Act claims are concerned. The demand-futility argument requires further consideration.

In a derivative action, "[t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort." FRCP 23.1. "A shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989 (9th Cir. 1999). "[A] court that is entertaining a derivative action . . . must apply the demand futility exception as it is defined by the law of the state of incorporation." *Kamen v. Kemper Fin.*, 500 U.S. 90, 108–109 (1991). As CNET is incorporated in Delaware, Delaware law applies to whether demand is futile.

Under Delaware law, "[p]laintiffs in a derivative suit are not entitled to discovery to assist their compliance with the particularized pleading requirement of Rule 23.1 . . . ." *Scattered Corp. v. Chicago Stock Exch.* 701 A.2d 70, 77 (Del. 1997). Defendants argue at great length that Delaware law should apply, and plaintiff should not be allowed discovery until he successfully pleads demand futility. Discovery is generally a procedural matter in which the federal rules govern. *Fagin v. Gilmartin*, 432 F.3d 276, n.2 (3d. Cir. 2005). Delaware law does not control discovery. It does, however, control the relationship between the company and its shareholders and what information the company must give to them, at least outside of litigation. No decision has conclusively reconciled these two themes.

Defendants cite a number of decisions in their briefs and at oral argument in which federal district courts have decided to stay discovery until demand futility is successfully pleaded in derivative actions under Delaware law. *See, e.g. In re Merck & Co., Inc. Deriv. and ERISA Litig.* 2006 WL 1228595, at *17 (D. N.J. May 5, 2006); *Lewis v. Hilton*, 648 F.Supp.

5

725, 728 (N.D. Ill. 1986). Plaintiff cites two decisions where discovery was allowed during pleadings. Neither of them address the question of whether discovery should be permitted before the plaintiff has established that demand is futile. *In re FirstEnergy Shareholder Deriv. Litig.*, 219 F.R.D. 584, 585 (N.D. Ohio 2004); *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997). The Ninth Circuit has not weighed in on the issue.

This Court finds it troubling that the board in this case could have disclosed the report so widely, yet seeks to conceal its particulars from its own shareholders and the investing public. The purpose behind the demand rule is to prevent strike suits. In the last several months, however, there have been many reports in the press that CNET's officers and directors received backdated or at least incorrectly-dated stock options. CNET itself has undertaken an internal investigation into the matter. Resignations have followed. There is a good-faith basis for concern by CNET shareholders and the investing public.

This order, however, will deny plaintiff's motion to compel production of the special committee report. Plaintiff intends to file an amended complaint by January 11, 2007, and will make his case for excusing the demand without the aid of the special committee report. If plaintiff's new pleading fails in this regard, however, the Court may be prepared to revisit the discovery issue.

Finally, plaintiff argues that the PSLRA stay and Delaware law does not apply to the special committee report specifically because "[t]his court invited this motion to compel production of the SC Report, and in inviting the motion, at least with respect to the committee report, the PSLRA stay is not applicable" (Reply Br. 8). Plaintiff tries to make consideration of this motion prove far too much. Any prior permission granted to file this motion does not mean that the rest of federal securities law does not apply.

## CONCLUSION

For all of the above-stated reasons, this order declines to lift the discovery stay, and accordingly plaintiff's motion to compel production of the special committee report is **DENIED**.

This motion is denied without prejudice to plaintiff's ability to bring a motion to compel production of the special committee report if the stay is lifted.

**IT IS SO ORDERED.**

Dated:  December 15, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE